IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

MAR 2 8 2013

CLERK. US DISTRICT COURT
NORFOLK. VA

CHERYL VENISE AMBROSE,

    **Plaintiff**

    v.                                                    CIVIL NO. 2:11cv683

MICHAEL J. ASTRUE,
**Commissioner of the Social Security
Administration,**

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court upon Cheryl Venise Ambrose's ("Plaintiff")

objections to the Report and Recommendations of the Magistrate Judge. Pl.'s Objs., ECF No.

13. For the reasons set forth herein, the Court: (1) **ACCEPTS** the Magistrate Judge's Report and

Recommendations, ECF No. 12; (2) **AFFIRMS** the decision of the Commissioner of the Social

Security Administration ("Commissioner" or "Defendant"); (3) **DENIES** Plaintiff's Motion for

Summary Judgment, ECF No. 8; and (4) **GRANTS** Defendant's Motion for Summary Judgment,

ECF No. 9.

## Contents

I.    PROCEDURAL BACKGROUND................................................................2
II.   FACTUAL BACKGROUND...................................................................3
    A.   MEDICAL EVIDENCE IN THE RECORD ............................................3
    B.   TESTIMONY DURING THE MARCH 15, 2011 ADMINISTRATIVE HEARING...........10
    C.   THE ALJ'S DECISION ...............................................................11
III.  STANDARD OF REVIEW....................................................................15
IV.  DISCUSSION...................................................................................17

A.   THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE.............................17

    1.   Dr. Falik's Medical Opinion Evidence ......................................17

    2.   DDS Medical Consultant Medical Opinion Evidence ................21

B.   THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY.....................22

V.   CONCLUSION.........................................................................25

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on September 10, 2009,[1] alleging disability since January 1, 2003. R. 141-45. The Social Security Administration denied Plaintiff's application initially, R. 67-76, and on reconsideration, R. 77-85. An administrative hearing was held on March 15, 2011, R. 33-58, and the ALJ issued a decision denying Plaintiff's claim on April 14, 2011, R. 17-32. On November 8, 2011, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. R. 1-7.

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely filed the instant action for judicial review of Defendant's final decision. Plaintiff filed her Motion for Summary Judgment on April 10, 2012. ECF No. 8. Defendant filed his Motion for Summary Judgment on May 14, 2012. ECF No. 9. The matter was then referred to a United States Magistrate Judge pursuant to: (1) 28 U.S.C. § 636(b)(1)(B) and (C); (2) Rule 72(b) of the Federal Rules of Civil Procedure; and (3) Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Magistrate Judge's Report and Recommendations, issued on December 18, 2012, recommends that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and the decision of the Commissioner be AFFIRMED. ECF No. 12.

---

[1] Page citations are to the administrative record.

Plaintiff filed her objections to the Magistrate Judge's Report and Recommendations on January 13, 2013. Pl.'s Objs., ECF No. 13. Defendant filed his response to those objections on January 16, 2013. Def.'s Resp., ECF No. 14.

## II.   FACTUAL BACKGROUND

Plaintiff was born in 1957, R. 141, graduated high school, R. 39, and was 50-years old on her date of last insured, March 31, 2008,[2] R. 36, 168. Plaintiff's past relevant work was as a cable splicer for an electric company from August 1992 to June 2003. R. 40, 176, 190. Plaintiff lived alone at the time of her application for DIB in 2009. R. 136. In 1999, Plaintiff underwent back surgery, but was able to return to work until 2003. R. 42.

### A.   MEDICAL EVIDENCE IN THE RECORD

On April 24, 2003, Plaintiff was evaluated for medical treatment by Najmaldin O. Karim, M.D. At that evaluation, Plaintiff complained that she experienced a lot of pain in her back and the back of her thighs. R. 260. Dr. Karim noted that she moved stiffly and shifted her weight around in obvious discomfort. Id. The examination revealed tenderness in the lumbosacral spine, paraspinal muscle spasms, and a significantly limited range of motion in the spine. Id. Dr. Karim also noted: (1) a straight leg raising test that was normal bilaterally; (2) no focal weakness; and (3) normal sensation and reflexes. Id. It was the doctor's impression that Plaintiff had mechanical back pain, and that her symptoms were related to residuals from a herniated disc. Dr. Karim prescribed Plaintiff Vioxx, Skelaxin, and physical therapy. Id.

On June 6, 2003, Plaintiff returned for a neurosurgical evaluation follow-up with Dr. Kharim. At that follow-up, Dr. Karim noted that, though Plaintiff had been released to work, she

---

[2] To be entitled to DIB, Plaintiff must show that she was disabled under the Social Security Act on, or after, January 1, 2003 (her alleged date of disability onset), and on, or before, March 31, 2008. See 20 C.F.R. §§ 404.130-132 (2012).

stated that her previous employer had no position available for her. R. 259. Plaintiff's physical examination showed: (1) she was awake, alert, and oriented; (2) normal cranial nerves; (3) no weakness; (4) normal sensation; (5) normal reflexes; (6) tenderness in the lumbosacral spine; (7) decreased range of motion; and (8) a tender sciatic notch bilaterally with paraspinal muscle spasm. Id. Dr. Karim instructed Plaintiff to continue her medications and therapy. Id.

On July 1, 2003, Plaintiff underwent an MRI of her lumbar spine. The MRI report found evidence of "[p]ost operative changes at L4-5, but no evidence of recurrent herniation," "[s]ome mild enhancing scar . . . present on the left, predominantly posterolaterally" that could be causing "some very minimal left L5 root encroachment," and a "[d]iffuse broad-based central disc bulge L2-3 without root or sac compression." R. 271.

On July 10, 2003, Dr. Karim reviewed the MRI report's findings and x-rays, which revealed no evidence of recurrent disc herniation, spinal stenosis, or spinal instability. R. 258. Dr. Karim diagnosed degenerative disc disease with discogenic back pain. Id. He also found "no pathology that would require surgical intervention." Id. Dr. Karim instructed Plaintiff to exercise, stay active, and stretch on a regular basis, but discharged her from routine follow-up care unless she experienced further problems. Id.

On August 22, 2003, Plaintiff returned to Dr. Karim complaining of increased low back pain and pain in her buttocks and lower extremities. R. 257. Plaintiff reported worsening symptoms following a work hardening program. Id. Dr. Karim's evaluation of Plaintiff showed: (1) normal straight leg raising test; (2) no focal weakness; (3) normal deep-tendon reflexes; (4) moderate paraspinal muscle spasm in her lumbosacral area with moderate limitation of range of motion; and (5) mild decrease in sensation to pinprick at the L5 distribution on the left side. Id. Dr. Karim advised Plaintiff to proceed with her work conditioning program. Id.

On October 16, 2003, Plaintiff returned to Dr. Karim for further evaluation. Plaintiff finished her work hardening program, was feeling much better, and represented that she was doing her exercises. R. 256. Most of the pain in her back had subsided. Id. Her physical exam showed: (1) she was awake, alert, and oriented; (2) normal straight leg raising test; (3) normal reflexes; (4) no weakness; (5) minimal limits on range of motion; (6) minimal tenderness; and (7) paresthesias at the L5 distribution on the left side. Id. Dr. Karim instructed Plaintiff to continue exercising. Id.

On December 1, 2003, Plaintiff returned to Dr. Karim reporting constant low back pain that prevented her from standing or walking straight, as well as radiating pain to the lower extremities. R. 255. Plaintiff was not taking medication. Id. Dr. Karim's physical examination showed that Plaintiff was in obvious discomfort. Id. Though there was no weakness and normal reflexes, Dr. Karim reported evidence of: (1) paraspinal tenderness and spasms; (2) buttock and back pain with straight leg raising; and (3) decreased sensation to pinprick in the L5 distribution on the left side. Id. Dr. Karim prescribed Celebrex and Flexeril. Id.

On February 4, 2004, Plaintiff returned to Dr. Karim and reported feeling better. R. 254. Plaintiff told Dr. Karim that she was going to school and that her back became sore after sitting for more than 45 minutes. Id. Plaintiff's physical examination show: (1) no acute distress; (2) no weakness; (3) normal sensation; (4) normal reflexes; and (5) moderate paraspinal muscle spasm. Id. Dr. Karim recommended that Plaintiff continue her exercises. Id.

On June 8, 2004, Plaintiff reported that she was doing well until two weeks before, when she had a recurrence and exacerbation of her back pain. Id. Plaintiff was not on medications, and she was in the process of career training. R. 253. Plaintiff's physical examination showed: (1) that she was awake, alert and oriented; (2) moderate tenderness and paraspinal muscle spasm

5

in the lumbar region; (3) normal straight leg raising test; (4) no weakness; (5) normal sensation; and (6) normal reflexes. Id. Dr. Karim prescribed Flexeril. Id.

On August 12, 2004, Plaintiff returned to Dr. Karim complaining of severe pain in the back going into both buttocks and the posterior thighs. R. 252. Plaintiff was "working six hours a day." Id. Upon examination, Dr. Karim noted that Plaintiff walked with a very stiff gait. Plaintiff's physical examination showed: (1) significant tenderness of the lumbosacral spine; (2) moderate limits on range of motion; (3) pain with straight leg raising bilaterally; (4) no weakness; (5) normal sensation; and (6) normal reflexes. Id. Dr. Karim prescribed Vioxx and Flexeril. Id.

On September 16, 2004, Plaintiff complained of increased pain despite attending physical therapy. R. 251. Plaintiff reported that she was working, and that sitting all day made the pain worse. Id. Dr. Karim noted unchanged examination findings and instructed Plaintiff to continue physical therapy and medications. Id.

On October 4, 2004, Plaintiff underwent another MRI of her lumbar spine. The MRI reported evidence of "interim progression of the spondylotic changes at L4-L5 with interim development of a small sequestered disc fragment along the left posterior superior margin of L5 without apparent neural compression," "stable left anterolateral recess epidural scarring which embraces the left L5 root," and "modest progression of the spondylotic changes at L3-L4 and L2-L3 without evidence of disc herniation or spinal stenosis." R. 274.

On October 7, 2004, Plaintiff reported unchanged pain. R. 250. Dr. Karim reviewed the MRI findings and diagnosed recurrent disc herniation with radiculopathy. Id. Examination revealed: (1) tenderness in her lumbosacral spine; (2) limitation in her range of motion; (3) paraspinal muscle spasm; (4) no weakness; (5) decreased sensation to pinprick at the L5

distribution on the left side; and (6) a positive straight leg raising test.  Id.  Dr. Karim recommended Plaintiff continue physical therapy and conservative measures or consider surgery. Id.

On June 27, 2005, Plaintiff complained of "a lot" of pain in her back and lower extremities, more on the right. R. 249.  Dr. Karim's examination revealed: (1) tenderness and paraspinal muscle spasms in the lumbar region; (2) decreased range of motion; (3) negative straight leg raising bilaterally; (4) tight hamstrings on both sides; (5) paresthesias at the L5 distribution on the left side; (6) no weakness; (7) normal reflexes; (8) no bowel or bladder symptoms; and (8) no numbness or tingling.  Id.  Dr. Karim diagnosed exacerbation of residuals of herniated disc.  Id.  Plaintiff was prescribed Flexeril, Celebrex, and exercise.  Id.  No changes were found at follow-ups on September 1, 2005 or October 3, 2005. R. 247-49.

On November 14, 2005, Dr. Karim noted that the TENS unit "seem[ed] to be helping [Plaintiff] significantly" and that Plaintiff had "improved with conservative treatment." R. 246. Plaintiff's physical examination showed: (1) she was awake, alert and oriented; (2) no numbness or tingling; (3) no bowel or bladder symptoms; (4) no weakness; (5) a negative straight leg raising test; (6) mild paraspinal muscle spasm; (7) slight decrease in sensation at the L5 dermatome on the left; and (8) normal reflexes.  Id.  Dr. Karim recommended that Plaintiff exercise and use the TENS unit as directed.  Id.

On January 23, 2006, Dr. Karim noted that Plaintiff was "doing well overall" and "ha[d] improved."  R. 245.   Examination revealed: (1) normal cranial nerves; (2) no weakness; (3) normal sensation; (4) normal reflexes; (5) tenderness with decreased range of motion in spine; and (6) mild paraspinal muscle spasm.  Id.  Dr. Karim noted Plaintiff was able to only do sedentary work.  Id.

On April 6, 2006, Plaintiff complained of low back pain, stiffness, and left lower extremity pain that was worse lately due to the stress of her mother's death.   R. 244. Examination showed: (1) tenderness with decreased range of motion in spine; (2) normal straight leg raising; (3) no weakness; (4) decreased sensation at the L5 dermatome on the left side; (5) normal reflexes; and (6) ability to walk on her toes and heels.   Id.   Dr. Karim instructed Plaintiff to exercise, stretch, and take medications.   Id.

On July 20, 2006, Plaintiff reported that although the TENS unit helped, she continued to have back pain and lower extremity pain.   R. 243.   Dr. Karim's examination revealed: (1) paraspinal muscle spasms; (2) limited motion in the spine; (3) spinal tenderness; (4) bilateral straight leg raising to 70 degrees; (5) decreased sensation in the L5 dermatome on the left side; (6) normal cranial nerves; (7) no focal weakness; and (8) normal reflexes.   Id.   Dr. Karim prescribed Plaintiff Elavil and advised her to continue using the TENS unit, exercising, and stretching.   Id.

On September 21, 2006, Dr. Karim noted that Plaintiff was "feeling better overall," had been using the TENS unit, and had not taken medication since her last visit in July 2006.  R. 242-43. Plaintiff's physical examination revealed: (1) tenderness in her lumbosacral spine with decreased range of motion; (2) normal cranial nerves; (3) no weakness; (4) paresthesia at the L5 dermatome on the left side; and (5) normal reflexes.   Id.   Dr. Karim instructed Plaintiff to exercise, use the TENS unit, and take over-the-counter anti-inflammatories as needed.  R. 242.

On November 27, 2006, Plaintiff stated that she continued to experience back pain radiating into the buttocks.  R. 241.  Physical examination revealed: (1) lumbosacral tenderness; (2) spasms; (3) limited range of motion; (4) no numbness or tingling; (5) no bowel or bladder symptoms; (6) no acute distress; and (7) a normal straight leg raising test.   Id.  Dr. Karim again

8

instructed Plaintiff to exercise, use the TENS unit, and take over-the-counter anti-inflammatories as needed. Id.   On January 29, 2007, Dr. Karim recommended Plaintiff try to lose weight. R. 240.

On March 29, 2007, Dr. Karim noted, "overall [Plaintiff] is feeling better." R. 239. Plaintiff's physical exam revealed: (1) normal cranial nerves; (2) no weakness; (3) normal sensation; (4) normal reflexes; (5) tenderness; (6) decreased range of motion; and (7) mild paraspinal muscle spasm. Id.  Plaintiff was instructed to exercise and use the TENS unit. Id. Plaintiff's physical exams in May 2007, August 2007, and November 2007 revealed similar results. R. 236. Plaintiff continued to have relatively unchanged lower back pain and associated lower extremity symptoms. R. 226-240.

In January 2008 and March 2008, Dr. Karim's physical examination of Plaintiff showed: (1) she was awake, alert and oriented; (2) no bowel or bladder symptoms; (3) normal cranial nerves; (4) no weakness; and (5) normal reflexes. R. 234-35. He further noted, in March, that Plaintiff had no numbness or tingling, and Plaintiff's straight leg raising test was normal. R. 234.

A non-examining DDS medical consultant, Michael Cole, D.O., reviewed Plaintiff's claim file on January 11, 2010, and opined she could occasionally lift and carry 10 pounds, stand and/or walk 2 hours total and sit 6 hours total in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. R. 69-75. He concluded Plaintiff was not disabled, and was capable of sedentary work. R. 73-74. A second medical consultant, Leopold Moreno, M.D., affirmed Dr. Cole's opinion on May 7, 2010. R. 80.

Dr. Karim's partner, Joel L. Falik, M.D., examined Plaintiff on June 18, 2010. R. 282. Dr. Falik filled out a "Certificate of Disability" for Plaintiff on February 15, 2011. R. 295. The Certificate indicates Plaintiff is "totally disabled and unable to work," and will remain disabled

until July 14, 2011 due to a "Lumbar Disc Displacement." Id. The space on the certificate that indicates when the disability began is left blank. Id.

On March 17, 2011, Dr. Falik completed a "Lumbar Spine Impairment Questionnaire." R. 283-89. He indicated in the questionnaire that Plaintiff had constant severe back and leg pain, and her prognosis was poor. R. 283-85. He listed the following clinical findings: limited range of motion, marked tenderness, muscle spasm, antalgic gait, sensory loss, reflex changes, muscle atrophy, muscle weakness and crepitus. R. 283-84.   He opined that Plaintiff could sit for a half-hour and stand/walk for a half-hour hour in an 8-hour day, could lift and carry 5 pounds frequently and 10 pounds occasionally, and was totally disabled due to back pain. R. 285-88.

On June 23, 2011, Dr. Falik wrote a letter summarizing Plaintiff's treatment history and restating the findings made in the Lumbar Spine Impairment Questionnaire. R. 300-01. This letter was not a part of the record before the ALJ, but was presented to the Appeals Council while Plaintiff's appeal was pending. R. 299.

**B.    TESTIMONY DURING THE MARCH 15, 2011 ADMINISTRATIVE HEARING**

Plaintiff initially injured her back at work in 1994 and underwent back surgery in 1999. R. 41. She was able to return to work following surgery and worked until 2003. Id.

Plaintiff testified about her activities at the time of the hearing, as opposed to the relevant period of this case. She stated that she was unable to work as a result of her back pain. R. 54. She could not lift more than 15 pounds. R. 45. She could sit for 15 to 20 minutes and stand for 15 to 20 minutes. R. 46. Plaintiff estimated that she could walk half-a-block. Id. In an average day, Plaintiff got up and took a shower and her daughter made her breakfast. R. 48. She was able to bathe and dress herself. R. 47. During the day, she watched television, crocheted, and read the Bible. R. 49. Plaintiff lived with her daughter and five grandchildren, but she did not help care for her grandchildren. R. 38-39. She also did not do any household chores, laundry,

cooking, or shopping. R. 46-47. When her daughter went shopping, Plaintiff would help her take things out of the bags after she brought the groceries in the house. R. 47. At the time of her hearing, the only treatment she was getting was use of the TENS unit. R. 43. She used to take Flexeril, but it made her sleepy and "incoherent." R. 44. She also stretched and exercised for her back. R. 47. Plaintiff drove three and one-half hours to her doctor's appointments in Maryland, but she had to stop and stretch two times along the way. R. 48. She also reported increased pain the day after these trips. R. 51.

The Vocational Expert ("VE") testified that an individual of Plaintiff's age, education, and work history who could perform light work that did not require more than 4 hours of standing or walking in an 8-hour day, who was limited to no more than occasional postural activities, and who could not perform any climbing, could not perform any of Plaintiff's past work. R. 56. However, she could perform other work as an information clerk, a cashier, and a small products assembler. R. 56-57. The VE testified that an individual who was limited, as described by Plaintiff's testimony, could not perform any work. R. 57.

### C. THE ALJ'S DECISION

To qualify for DIB under the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[3] by reason of any medically

---

[3] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572.

determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A).  To meet this definition, the claimant must have a "severe impairment"[5] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability.  The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.  The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment that prevents him from any substantial gainful employment.  An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability.  An affirmative answer to question three or five establishes disability.  This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920.

The ALJ issued his opinion on April 14, 2011, addressing all five steps of the sequential analysis in determining Plaintiff is not disabled.  R. 20-29.  As a preliminary matter, the ALJ determined Plaintiff had acquired sufficient quarters of coverage to remain insured through March 31, 2008, her date of last insured.  R. 20.  At step one of the sequential analysis, the ALJ

---

[4] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."
[5] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c).

12

determined that Plaintiff did not engage in substantial gainful activity from January 1, 2003, the alleged onset date, through March 31, 2008. R. 22.

In evaluating the claims at step two and three, the ALJ found that Plaintiff had a back disorder and radiculopathy that were severe impairments under the regulations (step two), but they did not meet or equal in severity any of the listing of impairments (step three). R. 22-23. The ALJ found that Plaintiff's mood disorder was non-severe. R. 22-23.

Prior to moving to step four, the ALJ evaluated the record evidence. The ALJ considered the medical evidence regarding Plaintiff's back pain and lower extremity pain, her treatment for that pain, and Plaintiff's description of her daily activities. R. 24-27. The ALJ recognized that Plaintiff underwent back surgery to address a herniated disc in 1999 without complications, but continued to report pain. R. 24. He noted the results from an MRI and x-rays in 2003, as well as an MRI in 2004. R. 24-25. He summarized Dr. Karim's treatment notes from February 2002 through March 2008, including notes of physical therapy completed in 2003. R. 24-25. He also discussed Dr. Karim's treatment recommendations, which included exercise, stretching, use of a TENS unit, Flexeril, and over-the-counter medicine as needed. R. 25.

The ALJ considered Plaintiff's testimony that she used a TENS unit 3-4 times a week for pain, and took Aleve, but had not taken any prescribed medication for pain since January 2008. R. 24. He further considered Plaintiff's testimony that she could lift 15 pounds, sit or stand for 15-20 minutes at a time, and walk for about half-a-block. R. 24

The ALJ gave minimal weight to the opinions of the DDS medical consultants, because their conclusions that Plaintiff could lift 10 pounds, stand or walk for two hours in an 8-hour workday and sit for 6 hours in an 8-hour workday were not supported by the treatment records, or the conservative treatment Plaintiff required through March 31, 2008. R. 26.

The ALJ also gave minimal weight to the February and March 2011 opinions of Dr. Falik that Plaintiff could sit for a half-hour and stand or walk for half-hour in an 8-hour workday, could lift 5-10 pounds occasionally and 5 pounds frequently, and was totally disabled due to back pain. The ALJ assigned Dr. Falik's medical opinion evidence minimal weight because the findings were not supported by the: (1) conservative treatment Plaintiff required; (2) findings in the tests prior to March 31, 2008; or (3) findings in the most recent MRI. Dr. Falik also failed to designate a date from which the assessment began, and his conclusory statements regarding Plaintiff's disability encroached upon a decision reserved to Defendant. R. 26-27.

The ALJ found that Plaintiff had the residual functional capacity[6] to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff "could stand or walk for no more than four hours in an eight-hour workday," "retained the ability to kneel, crouch, crawl, stoop and balance only occasionally, and to perform work activities that did not require any climbing." R. 23.

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. R. 27. However, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found at step five that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. 27. The ALJ based his finding on the vocational expert's testimony that, given Plaintiff's residual functional capacity, she retained the ability to perform light unskilled jobs such as an information clerk, cashier, or small products assembler. R. 28.

---

[6] Residual functional capacity ("RFC") is what an individual can still do despite her limitations. 20 C.F.R.§ 404.1545(a). RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work-related physical and mental activities. SSR 96-8p, 1996 WL 374184 (S.S.A.), at *2.

Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, through March 31, 2008, the date of last insured. R. 29.

## III.   STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

"Determination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof in Steps 1 to 4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)) (internal citation omitted) (internal quotation omitted). If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. Id. (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has "a severe impairment ... which significantly limits ... [his] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to last—for at least twelve months, then the claimant is disabled. Id. § 404.1520(d); see 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of

those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." Id. § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if he can make an adjustment to other work. If the claimant cannot make such an adjustment, then he is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five-step inquiry is limited to determining whether: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 650 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In

performing its review, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653).

## IV.  DISCUSSION

Plaintiff raises the same arguments in relation to the Magistrate Judge's Report and Recommendations that she raised in her Motion for Summary Judgment when objecting the ALJ's decision. R. 17-29. Specifically, Plaintiff argues that the ALJ failed to: (1) properly weigh the medical evidence, and (2) properly evaluate her credibility. Pl.'s Objs. 1, ECF No. 16.

### A.  THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ failed to properly evaluate medical opinion evidence of Dr. Falik and the DDS Medical Consultants using the factors outlined in the Social Security regulations. Pl.'s Objs. 2-8, ECF No. 13.

### 1.  Dr. Falik's Medical Opinion Evidence

Pursuant to 20 C.F.R. § 404.1527(c), unless a treating source's opinion is given controlling weight, an ALJ is required to consider the factors set forth at §§ 404.1527(c)(1)-(6) in deciding the weight to give any medical opinion. This includes: (1) whether the source of the opinion has examined the plaintiff; (2) whether the source of the opinion has a treatment relationship with the plaintiff, and the nature, extent, and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; and, (6) any other factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source

17

has"). 20 C.F.R. §§ 404.1527(c)(1)-(6). Therefore, upon determining that Dr. Falik's opinion would not be afforded controlling weight, the ALJ was required to explain his decision to afford that opinion evidence "minimal weight" by reference to these factors. The Court finds that the ALJ sufficiently explained his decision using the aforementioned factors.

Though the ALJ fails to expressly address all of the factors listed in 20 C.F.R. §§ 404.1527(d)(1)-(6), that failure does not justify remand or overturning the decision. See Lusardi v. Astrue, 350 F. App'x 169, 172 (9th Cir. 2009) (finding ALJ's decision supported by substantial evidence, notwithstanding ALJ's failure to consider all factors, where the opinion suggests he was considering all factors and expressly addressed specialization, the nature of the treatment relationship, consistency with the record, and other relevant factors). The ALJ's decision states that the ALJ "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." R. 23. Thus, it is clear that the ALJ was aware of the need to consider the all six aforementioned factors. In affording Dr. Falik's opinion "minimal weight," the ALJ also expressly addresses five of those factors.

First, the ALJ was obviously aware of Dr. Falik's treatment relationship with Plaintiff, having made specific reference to the results of one of his examinations in June 2010, R. 25, as well as the Certificate of Disability Form completed by Dr. Falik, which represented that Plaintiff had been under his care since May 4, 1994, R. 26 (referencing certification of disability), 295 (certification of disability). The ALJ also looked closely at the nature, extent, and length of the treatment relationship, stating that he gave Dr. Falik's opinions "minimal weight" because they are "not supported by the by the conservative treatment the claimant required, by the findings in the tests prior to March 31, 2008." R. 26. Read in light of the ALJ's earlier account of Plaintiff's medical history, it is clear that the ALJ understood Plaintiff was

18

treated by Dr. Karim from February 2002 through March 10, 2008. R. 24-26. It was only after that March 10, 2008 visit, when Plaintiff began to see Dr. Falik, that Plaintiff's very conservative course of treatment was abandoned and she was suddenly found to be totally disabled. The ALJ further determined that Dr. Falik's opinions were neither supported by relevant evidence nor consistent with the record as a whole. R. 25 (affording minimal weight due to inconsistency with findings and tests, both before and after March 31, 2008, the date of last insured).

The ALJ's only true mistake, other than failing to expressly acknowledge Dr. Falik's specialty, was affording Dr. Falik's RCF determination "limited weight" because, under 20 C.F.R. § 404.1527(d), Dr. Falik's conclusory statements concerning Plaintiff's RCF does not qualify as medical opinion evidence. To that end, if anything, Dr. Falik's opinion was afforded too much weight, not too little as Plaintiff argues. After reviewing the ALJ's decision, the Court finds that the ALJ more than adequately explained, by reference to the factors set forth at § 404.1527, his justification for only assigning Dr. Falik's opinion evidence "minimal weight."

The Court further finds that, even if one could fault the ALJ's consideration of the § 404.1527 factors, any such error with respect to Dr. Falik's medical opinion evidence is harmless. Dr. Falik only examined Plaintiff on one occasion, more than two years after her date of last insured. His findings were wholly inconsistent with those of his associate, Dr. Karim, during the relevant period of time. Dr. Karim examined Plaintiff twenty-seven times from April 23, 2003 to March 10, 2008. R. 234-60. Following each examination, Dr. Karim made a finding of normal reflexes and no muscle weakness. Id. Not once did Dr. Karim note muscle atrophy or crepitus. Id. Dr. Karim also found that Plaintiff "walked with a stiff posture" on only two of the twenty-seven examinations. R. 252, 260. There are no other references to an "antalgic gait." R. 235-60.

Dr. Falik, on the other hand, lists reflex changes, muscle atrophy, muscle weakness, crepitus, and antalgic gait as five of the nine clinical findings supporting his opinion. R. 283-84. None of these five findings were present during the relevant time period, and their notable absence necessarily undermines the relevance of his opinion. R. 283-84. As a result, Dr. Falik's opinion is not consistent with the record during the relevant period, and the ALJ's failure to expressly address each factor set forth at 20 C.F.R. § 404.1527(d)(1)-(6) constitutes harmless error for which remand is inappropriate. See Morgan v. Barnhart, 142 Fed. App'x 716, 723 (4th Cir. 2005) (holding that even if a medical opinion was due special weight under the treating-physician rule, any error in failing to credit the opinion was harmless); Boone v. Halter, 23 Fed. App'x 182, 183 n.* (4th Cir. 2002) (per curiam) (upholding Commissioner's decision and finding that to the extent the Commission failed to follow social security procedures, the plaintiff failed to show resulting prejudice); Camp v. Massanari, 22 Fed. App'x 311, 311 (4th Cir. 2001) (per curiam) (holding that where plaintiff failed to show prejudice, any error on the part of the ALJ was harmless).

Plaintiff insists that, pursuant to a footnote in Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988), the Court may not rely on the Magistrate's justification of harmless error because the ALJ did not discuss the inconsistency of Dr. Falik's medical opinion evidence  in such detail. First, this argument fails because the ALJ did obviously acknowledge that Dr. Falik's opinion evidence is inconsistent with the medical record, and the Court simply expounds upon that justification by pointing to specific parts of the record to evidence the point. R. 26 (ALJ giving minimal weight to Dr. Falik's opinion evidence because it is "not supported by the conservative treatment the claimant required, by the findings in the tests prior to March 31, 2008 or by the findings in the most recent MRI"). Second, the Court is not hamstrung by the words

set forth in the ALJ's decision.   Though it may affirm only upon the reasons given, "the reviewing court must base its decision on a review of the record as a whole and 'may look to any evidence in the record, regardless of whether it has been cited by [the Commissioner].'"  Baxter v. Astrue, 3:11-CV-679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013) (citing Heston v. Comm'r Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001); Rose v. Astrue, No. 3:11–CV–701, 2012 U.S. Dist. LEXIS 171947, at *14, 2012 WL 6026473 (E.D. Va. Dec. 4, 2012)).

### 2.   DDS Medical Consultant Medical Opinion Evidence

Plaintiff also argues that the ALJ failed to properly evaluate medical opinion evidence of of the DDS Medical Consultants using the factors outlined in the Social Security regulations. Pl.'s Objs. 7-8, ECF No. 13. Citing SSR 96-6p, 1996 WL 374180 (July 2, 1996), Plaintiff insists that the ALJ failed to properly assess that DDS opinion evidence by reference to the factors set forth at 20 C.F.R. §§ 404.1527(c)(2)-(6).

The DDS Medical Consultants constitute non-examining sources, and their opinion evidence is to be assessed under § 404.1527(e).  Where a treating source is not given controlling weight, non-examining source opinion evidence must be assessed by reference to the factors set forth at 20 C.F.R. §§ 404.1527(c)(1)-(6).   See 20 C.F.R. § 404.1527(e); Id. at § 404.1527(e)(2)(ii). But, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."   Id. at § 404.1527(e)(2)(i).  Though they must consider State agency medical consultant findings and opinions as opinion evidence, the "ultimate determination about whether" an individual is disabled is clearly reserved for the ALJ. Id.

The Court finds that the ALJ adequately explained his decision to afford the medical opinion evidence of the DDS Medical Consultants "minimal weight." R. 26. With respect to the DDS medical opinions, the ALJ states that

21

they were not supported by the treatment records or by the conservative treatment [Plaintiff] required through March 31, 2008. As noted above, [Plaintiff] retained the ability to ambulate effectively and multiple examinations noted negative straight leg raising. The treatment records did not document objective evidence consistent with the agency consultants' findings of limitation on standing to 2 hours and limitation on lifting to 10 pounds. [Plaintiff] ambulates without assistance and most of the examination records indicated that her motor strength was good. [Plaintiff] had some decreased range of motion and some tenderness in her back but the serious limitations cited by the agency consultants are inconsistent with [Plaintiff's] testimony that she has not taken medication since 2008 and that she uses only a TENS unit and over-the-counter medication for her pain. The evidence . . . does not support the agency consultants' finding that [Plaintiff] is limited to sedentary work activities with additional limitations.

R. 26.

The ALJ was obviously aware that these DDS Medical Consultants had not examined the Plaintiff, and that their treatment relationship was necessarily limited to a review of the medical record in this case. R. 67-85. The ALJ also clearly assessed whether these opinions were supported by relevant evidence and consistent with the record as a whole. The only error which Plaintiff can argue is that the ALJ did not expressly take notice of whether or not the source opinion is a specialist. 20 C.F.R. § 404.1527(c)(5). There is, however, nothing in the Disability Determination Examinations to suggest that the State Agency medical consultants held relevant specialties, thus he cannot be faulted in that respect. The ALJ, therefore, more than adequately explained his decision to afford this opinion evidence "minimal weight" in the decision. R. 26.

**B.    THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY**

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's credibility. Pl.'s Objs. 9-14, ECF No. 13. Plaintiff makes two points n advancing this argument. First, Plaintiff insists that, even where a plaintiff's testimony is inconsistent with all objective medical evidence, the ALJ must credit that subjective evidence in making its disability determination. Second, Plaintiff generally takes issue with the ALJ's determination that Plaintiff's testimony was inconsistent with the medical record. The Court finds neither argument persuasive.

With respect to Plaintiff's first line of argument, the Court finds that the ALJ properly evaluated Plaintiff's credibility by reference to the medical record. After step three of the ALJ's five-part analysis, but prior to deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f); Id. at § 416.945(a)(1). The RFC determination must incorporate impairments supported by objective medical evidence, as well as impairments based on credible complaints advanced by the claimant. The ALJ uses a two-step analysis in evaluating a claimaint's subjective complaints. See Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006) ("SSR 90–1p and its successors establish a two[-]step process that comports with applicable Fourth Circuit precedent." (citing Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (per curiam)).

First, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably produce the claimant's pain or symptoms. Craig, 76 F.3d at 594. In doing so, the ALJ must consider all relevant medical evidence in the record. Id. If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individuals' ability to work. Id. at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. Id. at 595-96.

Plaintiff correctly notes that, pursuant to the ruling in Hines v. Barnhart, in this Circuit a plaintiff is "entitled to rely exclusively on subjective evidence" when satisfying the second part of the test. But, that alone is an inadequate representation of the relevant legal standard. The Fourth Circuit went on in Hines to state that

While objective evidence is not mandatory at the second step of the test, [t]his is not to say . . . that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Hines, 453 F.3d at 565 n.3 (emphasis added).

In the instant case, the ALJ determined that the medical conditions cited by Plaintiff could reasonably produce Plaintiff's pain and/or symptoms. R. 24. But, the ALJ also found the record did not support the degree of limitation she alleged. R. 24. In making the credibility determination, the ALJ compared Plaintiff's testimony concerning her work capacity and pain with the objective medical evidence and Plaintiff's testimony regarding her day-to-day life. Id. The ALJ noted Plaintiff's testimony that she: (1) injured her back in 1994; (2) had not seen any improvement in the pain since the injury for which she underwent surgery in 1999; and (3) did not have frequent absences from work. R. 24. The ALJ further noted Plaintiff's testimony that, while she sometimes rated her pain at 10/10, she had not taken prescribed pain medication since January 2008, but rather relied on a TENS unit and over-the-counter medication. R. 24.

The ALJ also pointed to objective medical evidence, summarizing results from two MRIs and x-rays, as well as the treatment notes of Dr. Karim from February 2002 through March 2008. R. 25. This evidence led the ALJ to find that "[t]he complaints of Plaintiff [Plaintiff] regarding her ability to perform physical activities are not supported by the documented recommendations of her treating physician, who told her to exercise, remain active and stretch regularly." R. 26.

The Court finds that the ALJ properly assessed Plaintiff's credibility. Plaintiff's argument to the contrary relies on a misstatement of the law, as Plaintiff effectively argues that

24

an ALJ must credit a plaintiff's testimony notwithstanding its inconsistency with objective medical evidence. This Circuit has never embraced that standard. Though a claimant is "entitled to rely exclusively on subjective evidence"—i.e., a claimant's allegations about their pain—an ALJ need not accept those allegations to the extent that they are inconsistent with available evidence, "including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain." Hines, 453 F.3d at 565 n.3 (emphasis added).

Plaintiff also takes issue with the ALJ's determination that Plaintiff's testimony was inconsistent with the medical record. In reviewing for substantial evidence, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653). The Fourth Circuit has further held that, "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Edelco, 132 F.3d at 1011.

The Court finds that the ALJ more than adequately justified his credibility determination with respect to Plaintiff's hearing testimony and, based on those justifications, that determination is supported by substantial evidence.

## V.    CONCLUSION

The Court has fully dispensed with Plaintiff's objections. For the reasons set forth herein, the Court finds that: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. The Court, therefore: (1) **ACCEPTS** the Magistrate Judge's Report

and Recommendations, ECF No. 12; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration; (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 8; and (4) **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 9.  The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

     **IT IS SO ORDERED**.

/s/

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 28, 2013

26